UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:23-cv-00054

| | |
|---|---|
| MATTHEW TCHIRKOW, | ) |
| Plaintiff, | ) |
| v. | ) AMENDED COMPLAINT and |
| | ) JURY TRIAL DEMAND |
| ATLANTIC MEDICAL SOLUTIONS, LLC, | ) |
| Defendant. | ) |

Plaintiff, Matthew Tchirkow ("Tchirkow" or "Plaintiff"), by and through counsel, brings this action for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, against Atlantic Medical Solutions, LLC ("Defendant").

## NATURE OF PLAINTIFF'S CLAIMS

1. Defendant unlawfully discriminated against Plaintiff in violation of the ADA by terminating his employment because of his mental health disabilities.

## THE PARTIES

2. Plaintiff is an adult individual who is a resident of Hendersonville, North Carolina.

3. Defendant is a domestic limited liability company formed under the laws of North Carolina with its principal place of business located at 4610 Entrance Dr., Suite M, Charlotte, North Carolina 28273.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the ADA for unlawful discrimination and retaliation.

5. This Court has personal jurisdiction because Defendant conducts substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

7. At all times relevant to this action, Plaintiff was a "qualified individual" covered by the protections of ADA, as amended, within the meaning of 42 U.S.C. § 12111(8).

8. At all relevant times, Defendant, was a "covered entity" engages in an industry affecting commerce and had at least fifteen (15) or more employees each working day.

9. At all relevant times, Plaintiff was an "employee" within the meaning of 42 U.S.C. §12111(4).

10. Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5).

11. Defendant employed at least fifteen (15) employees at all relevant times.

12. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 430-2022-00154) alleging discrimination based on disabilities and retaliation on or about October 20, 2021. The EEOC issued a Notice of Suit Rights on November 16, 2022, and Plaintiff timely brings this action within ninety (90) days of his receipt thereof.

## PLAINTIFF'S FACTUAL ALLEGATIONS

13. In or about 2008, Tchirkow was diagnosed with depression and prescribed various selective serotonin reuptake inhibitors (SSRIs).

14. In or about 2016 or 2017, Tchirkow was diagnosed with bi-polar disorder and prescribed various medications including Lamictal. Although it is treatable, bi-polar disorder is a permanent medical condition.

15. With bi-polar disorder, Tchirkow experiences episodes of mood swings ranging from acute manic episodes to acute depressive episodes. During a manic episode, Tchirkow experiences abnormally high energy and excitement, exaggerated sense of well-being and self-confidence, and impulsive and poor decision making (including buying sprees and foolish investments). During a depressive episode, Tchirkow experiences depressed mood, confusion, inability to think and concentrate, loss of interest or feeling no pleasure in most activities, significant decrease in appetite, decreased hygiene, feelings of worthlessness, abnormally high levels of anxiety and stress, which have led to thoughts about, plans to, and/or attempting suicide.

16. Since being prescribed medication for bi-polar disorder, Tchirkow has consistently taken his medication. However, there have been sporadic times when Tchirkow did not take his medication for various reasons. Even with his medications, Tchirkow still occasionally experiences acute manic episodes and acute depressive episodes. Over the past 3 three years, Tchirkow has experienced at least two manic episodes and at least six depressive episodes. The duration of Tchirkow's episodes range from two to six weeks.

17. During manic or depressive episodes, Tchirkow's major life activities of working, interacting with others, communicating, thinking, caring for himself, eating, and sleeping are substantially impaired.

18. Tchirkow began his employment with Defendant on or about July 6, 2020 and held the Account Manager role.

19. Defendant operates in the medical device market and distributes instrumentation, equipment, and supplies for medical practices including clinics, laboratories, surgery centers, general practice, and specialties.

20. At all relevant times, Tchirkow met or exceeded Defendant's legitimate employment expectations. Tchirkow received positive performance evaluations and no disciplinary actions until he utilized protected leave due to his mental health disability.

21. In or about late March 2021, Tchirkow began experiencing an acute depressive episode, which manifested symptoms including angry outbursts, frustration, anxiety, inability to communicate, confusion, and suicidal ideations. Tchirkow scheduled an appointment with his therapist for March 22, 2021. However, upon arriving, Tchirkow learned his therapist was out of his insurance network and he could not afford the out-of-pocket cost of the appointment. Tchirkow canceled his appointment and had to look for another therapist.

22. On March 23, 2021, Tchirkow scheduled an appointment with one of Defendant's clients in Asheville, NC—Dr. Leslie Koretz ("Dr. Koretz") of Twardon Family Medicine. However, the same day, Tchirkow experienced a severe, debilitating flare-up of his acute depressive episode and missed his appointment. Dr. Koretz's secretary notified Defendant that Tchirkow missed the appointment.

23. At approximately 11:27 a.m. on or about March 23, 2021, Tchirkow emailed Defendant, stating:

> Hey Guys
> I have have (sic) a need/question. Are there any resources that the company has/can suggest/has partnerships with for mental health help outside of our insurance.

24. Either Jim Macholz ("Macholz"), Defendant's President and CEO, Joey Jackson ("Jackson"), Tchirkow's direct manager, or Richard Bingham, Defendant's VP of Operations, telephoned Tchirkow. Due to experiencing a severe, debilitating flare-up of his acute depressive episode, Tchirkow does not remember who he spoke with during the telephone call; however, knew it was a representative of Defendant. Tchirkow informed the caller that he has depression, bipolar disorder, and was experiencing "an exacerbation" of his symptoms, which is why he missed the appointment. Tchirkow gave his telephone to his daughter—who concluded the phone call with Defendant's representative.

25. Around the time of Tchirkow's telephone call with Defendant's representative, ShanDell Beemer ("Beemer"), Tchirkow's former fiancée, attempted to telephone and text Tchirkow and his daughter at least ten to fifteen times, waiting less than 5 minutes between each attempt. Neither Tchirkow nor his daughter responded. Because she received no response from Tchirkow or his daughter, Beemer telephoned the Greenville Police to perform a welfare check on Tchirkow. Upon arriving, Greenville Police telephoned an ambulance and ordered that Tchirkow be admitted to Prisma Health's psychiatric wing because he expressed suicidal ideations. Beemer telephoned Jackson to inform him that Tchirkow had been admitted to the psychiatric wing but Jackson did not answer.

26. At approximately 6:54 p.m. on or about March 23, 2021, Beemer emailed Jackson:

This is ShanDell Beemer. Matt Tchirkow's other half. I need you to call me asap please regarding Matthew. I'm trying to locate the facility he was taken to for treatment. I do not think wherever he is, they will let him leave due to the condition he is in.
You can reach me at [privacy redaction]. Anytime! I will have my phone on all night in case there are any problems with Matt at the facility.

27. At approximately 11:02 a.m. on or about March 24, 2021, Macholz emailed Beemer stating:

5

> ShanDell
> I received a forwarded email from you in regard to the location of Matt Tchirkow. We do not have that information and for legal reasons we can not give that to you anyway.
>
> Going forward if you will please contact Matt directly if needed.
>
> Thank you for your concern of Matt and his wellbeing.

28. At approximately 3:23 p.m. on or about March 24, 2021, Beemer replied stating:

> Hello there!
> I was not emailing to find Matt, lol. I know where he is….you guys do not! I am good fiance and needed to let someone know he's been admitted to the hospital! It's ridiculous to think no one would return my call. You can obviously not reach him as he can not have any phone calls or visitors due to his health..I was trying to contact someone to keep you guys updated, so someone can keep up on his accounts.
> So…in that regard…if you'd like to know anything….I'm your only person to contact. I think it's ridiculous that you would think I'm asking you where he is! His children do not even know what facility he is in.
> So if you want someone to keep up on those accounts…I suggest you contact me.
> [privacy redaction]

29. Prisma Health released Tchirkow later in the day on or about March 24, 2021.

Tchirkow or Beemer informed Defendant that Tchirkow had been released from the hospital.

30. On or about March 25, 2021, Macholz emailed Tchirkow stating, "I hope you are on your way to recovering and please see the attached letter." The attached letter states:

> Dear Matt,
>
> We are pleased to hear that you are safe and have been released from the hospital. We have been concerned about you. We would like you to take the rest of the month, through Wednesday, March 31, 2021, as paid time off. This will allow you a few days to focus on you.
>
> During this time, we will take care of your AMS accounts. Your work emails have been rerouted to the office. Joey and Richard will be calling on all of your accounts. There is no need to do anything related to AMS business. Please take the time to focus 100% on you.
>
> On Wednesday, March 31 we will contact you for next steps.

Take care,

Jim Macholz

31.     On or about March 31, 2021, Macholz telephoned Tchirkow to discuss the plan so that Tchirkow could return to work. Tchirkow informed Macholz he had an appointment with his primary care provider the following day, April 1, 2021, and that Tchirkow would follow up with Macholz with his primary care provider's back-to-work plan on April 2, 2021.

32.     On or about April 1, 2021, Tchirkow had an appointment with his primary care provider, Dr. Tanya Chin ("Dr. Chin"). Dr. Chin refilled Tchirkow's prescription and instructed Tchirkow to follow up with her in two weeks.

33.     Defendant provided Tchirkow with unpaid leave until he received clearance from his primary care provider to return to work.

34.     On or about April 16, 2021, Tchirkow had a follow up appointment with Dr. Chin. Dr. Chin cleared Tchirkow to return to work on or about April 19, 2021 and Tchirkow emailed Macholz with the letter from Dr. Chin. Macholz emailed Tchirkow confirming receipt of the letter and establishing a phone call at 4:30 on April 19, 2021.

35.     On or about April 19, 2021, Macholz telephoned Tchirkow around 4:30 p.m. and discussed Tchirkow's return to work the following day.

36.     Tchirkow returned to work on or about April 20, 2021, and, upon returning, Macholz and Betsey Macholz, Defendant's Human Resources Director, presented Tchirkow with a performance improvement plan ("PIP") because Tchirkow "was not meeting his sales numbers." Tchirkow requested to see his sales numbers from when he started working for Defendant. Macholz refused to provide Tchirkow with his sales numbers.

37. On or about April 22, 2021, Macholz emailed Tchirkow regarding the PIP. Macholz's emailed stated:

> Matt,
>
> These are our expectations and the plan was created based on your excessive absences and not being on sales plan in 2021. We need to you (sic) sign and date the back-to-work plan for us to move forward.
>
> AMS is a small company with limited employees and sales force, performance and attendance are paramount. If those cannot be obtained we have to move on.
>
> Please let me know what your decision is by Friday April 23, 2021.
>
> Best Regards,
>
> Jim Macholz

38. During Tchirkow's employment, his only absences related to the acute depressive episode Tchirkow experienced between March 24, 2021 and April 19, 2021.

39. Tchirkow signed and initialed the PIP on April 23, 2021. The PIP provides:

> AMS has created a back-to-work plan for the next six weeks. This plan includes sales and productivity goals. On May 28, 2021, AMS will evaluate progress and goals achieved and determine next steps for employment.

40. On or about May 5, 2021, Macholz terminated Tchirkow's employment via email. Macholz's email states, "Based on your lack of compliance with the expectations and terms in the Back-to-Work plan, your employment with AMS has been terminated as of April 30, 2021."

41. Defendant's stated reason for terminating Tchirkow's employment is pretext for disability discrimination in violation of the ADA.

42. Defendant's failure was willful.

## **PLAINTIFF'S FIRST CAUSE OF ACTION**
### (Violations of ADA—Discrimination)

43. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

44. Defendant regularly employed more than fifteen employees at all relevant times.

45. Plaintiff was disabled in that he had mental impairments that substantially limited one or more major life activities, including but not limited to working, interacting with others, communicating, thinking, caring for himself, eating, and sleeping.

46. At all times relevant, Plaintiff was able to perform the essential functions of his job with or without accommodation.

47. Defendant discriminated against Plaintiff by terminating Plaintiff's employment because of Plaintiff's disability.

48. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff suffered lost back and front pay, benefits associated with his employment, and has suffered and continues to suffer severe emotional distress, severe physical distress, anxiety, depression, embarrassment, and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a) An Order pursuant to the ADA that the Defendant pay Plaintiff all lost wages, benefits, compensation, and monetary loss suffered because of Defendant's unlawful actions;

b) An Order pursuant to the ADA ordering Defendant to pay compensatory damages;

c) An Order pursuant to the ADA ordering Defendant to pay punitive damages;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) A Declaration and finding by the Court that Defendant willfully violated provisions of the ADA for the unlawful discrimination;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEAMAND

Plaintiff demands a trial by jury for all issues of fact.

This 5th day of May, 2023.

    Respectfully submitted,

    s/ Corey M. Stanton
    Philip J. Gibbons, Jr., NCSB #50276
    Corey M. Stanton, NCSB #56255
    Ethan L. Slabosky, NCSB #59555
    **GIBBONS LAW GROUP, PLLC**
    14045 Ballantyne Corporate Place, Suite 325
    Charlotte, North Carolina 28277
    Telephone: (704) 612-0038
    Facsimile: (704) 612-0038
    Email: phil@gibbonslg.com
          corey@gibbonslg.com
          ethan@gibbonslg.com

    *Attorneys for Plaintiff*